IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| ANGEL L. H., )<br>)<br>       **Plaintiff,** )<br>)<br>v. )<br>)<br>**COMMISSIONER OF SOCIAL** )<br>**SECURITY,** )<br>)<br>       **Defendant.** )<br>)| Action No. 4:20-cv-120 |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Angel L. H.'s ("Plaintiff") Complaint, ECF No. 3, filed pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Defendant Kilolo Kajakazi, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff filed a Motion for Summary Judgment and Brief in Support, ECF Nos. 23, 24, and the Commissioner filed a cross-Motion for Summary Judgment and Memorandum in Support, ECF Nos. 25, 26. Plaintiff did not file a Reply, so the matter is now ready for recommended disposition. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 23, be **DENIED**, the

Commissioner's Motion for Summary Judgment, ECF No. 25, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

On April 5, 2017, Plaintiff protectively filed a Title II application for disability insurance benefits ("DIB"), alleging an onset date of October 4, 2015. R. at 59, 138.[1] Plaintiff's application was initially denied on July 14, 2017, and again denied upon reconsideration on December 20, 2017. R. at 73, 91. On January 25, 2018, Plaintiff requested a hearing in front of an administrative law judge. R. at 102. A hearing was held on March 21, 2019, before Administrative Law Judge Kerith Cohen ("the ALJ"). R. at 40–58. Plaintiff appeared at the hearing without representation. At the hearing, Plaintiff, Plaintiff's sister Chantilly Greene ("Ms. Greene"), and an impartial vocational expert testified. R. at 10. On July 31, 2019, the ALJ issued a decision finding Plaintiff not disabled. R. at 10–23. Plaintiff then filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on May 21, 2020. R. at 1–6. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. R. at 1–6.

Having exhausted her administrative remedies, on July 27, 2020, Plaintiff filed a Complaint for judicial review of the Commissioner's decision. ECF No. 3. The Commissioner filed an Answer on February 1, 2021. ECF No. 17. The matter was referred to the undersigned U.S. Magistrate Judge ("the undersigned") on February 2, 2021. ECF No. 19. Following the afore-described summary judgment briefing, the matter was referred to the undersigned and is now ripe for recommended disposition.

---

[1] "R." refers to the certified administrative record that was filed under seal on February 1, 2021, ECF No. 13, pursuant to Local Civil Rules 5(B) and 7(C)(1).

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff was thirty-four years old at the time of her amended alleged disability onset date of October 4, 2015. R. at 74. During the ALJ hearing, Plaintiff explained that she currently lives with her sister, Ms. Greene, and Ms. Greene's husband. R. at 46. Plaintiff obtained a GED and previously worked as a certified nursing assistant. R. at 47. She testified that she could no longer perform that work nor drive because "the state took everything" from her including her CNA and driver's licenses. R. at 47. Plaintiff's last worked as a CNA.

The Record included the following factual background for the ALJ to review:

### A. Plaintiff's Medical Records Relevant to Alleged Physical Impairments

In April 2015, Plaintiff was punched in the occipital head and left jaw by a patient at her workplace. R. at 304. X-rays were negative for any head trauma. R. at 306. On re-evaluation two days later, Plaintiff complained of headaches, stiffness, and back and neck pain. R. at 302. She was assessed with post-concussive syndrome and cervical strain and prescribed oxycodone, Flexeril, and Percocet. R. at 303.

In April 2019, Plaintiff was diagnosed with degenerative disc disease following an MRI of her lumbar spine after complaints of chronic lower back pain. R. at 524. Plaintiff complained of other physical conditions including chronic lower back pain, right foot injury, fainting spells, knee pain, shoulder pain, and migraine headaches. R. at 284, 287–89, 471, 524, 572.

### B. Plaintiff's Medical Records Relevant to Alleged Mental Impairments

Prior to the relevant period, Plaintiff discussed with her primary care physician concerns with her concentration and mood. *See* R. at 269–70. Following her 2015 altercation at work and subsequent firing, Plaintiff treated with a different physician, complaining of anxiety, depression, insomnia, hallucinations, and inappropriate laughing and crying. R. at 291-93.

Plaintiff alleged in May 2017 that she suffered from loss of interest, depression, hopelessness, sleep problems, fatigue, trouble concentrating, and restlessness; she was subsequently diagnosed with severe depression. R. at 344, 345. Four months later, Plaintiff visited the emergency room complaining of aches. R. at 352. Plaintiff reported that she had stopped taking her anxiety and depression medications and experienced suicidal ideations. R. at 352. In October 2017, she began participation in individual therapy and thereafter consistently reported that she was depressed and intermittently homeless. *See, e.g.*, R. at 380, 440–45, 448, 451.

In February 2018, Plaintiff treated with Dr. Golpira, complaining that she had trouble sleeping, felt depressed, wished at times to not exist, and had thoughts of harming others. R. at 459. Dr. Golpira assessed that Plaintiff appeared intoxicated with slowed speech and mannerisms, and a urine screening was positive for THC, benzodiazepines, and methadone. R. at 459–60. Accordingly, he made a referral to a substance abuse clinic. R. at 460. A couple of weeks later, Plaintiff's therapist noted that her affect was depressed, and Plaintiff reported isolating and crying daily as well as being frustrated that her urine test was positive despite her objection to having used drugs. R. at 463. Plaintiff's mood and complaints were comparable throughout the next year as she reported depression, self-loathing, frustration, and suicidal ideations. *See, e.g.*, R. at 469–70, 480, 488.

In March 2019, Plaintiff visited the emergency room with complaints of hallucinations and suicidal thoughts. R. at 527, 529. The emergency room physician suspected that Plaintiff's symptoms were related to the Ambien that she had taken. R. at 533.

### C. Mental Evaluations Completed by State Agency Examiners

State agency psychologist Dr. Joseph Leizer independently reviewed Plaintiff's record in June 2017 and concluded that Plaintiff had "mild limitations in adapting or managing [her]self"

4

and "moderate limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace." R. at 64. In general, Dr. Leizer determined that Plaintiff was "capable of simple routine work." R. at 69.

In December 2017, state agency psychologist, Dr. Nicole Sampson, performed a reconsideration of Plaintiff's record and found moderate limitations in: understanding and remembering detailed instructions; maintaining attention and concentration for extended periods; acting appropriately with the general public; and responding appropriately to changes in the work setting. R. at 86. Dr. Sampson opined that Plaintiff would work best in a well-spaced environment away from the public; with constructive and non-confrontational supervision; and with change introduced slowly and gradually. R. at 86–87.

In December 2017, Plaintiff also underwent a consultative psychological evaluation by Dr. Howard J. Bierenbaum. R. at 384–86. Plaintiff reported having a "breakdown" several months prior and experiencing homelessness as well as depression and anxiety. R. at 384. Plaintiff's Mini Mental State Examination was normal. R. at 385. Dr. Bierenbaum diagnosed Plaintiff with depression, anxiety, rule out post-traumatic stress disorder, and borderline intellectual functioning. R. at 384.

### D. Plaintiff's Function Report and Testimony at ALJ Hearing

Plaintiff submitted an incomplete function report in April 2017 in which she reported that she felt alone and kept herself secluded. R. at 214. Plaintiff described being able to lift twenty-five pounds and walk short distances (ten minutes before needing a rest). R. at 214. Additionally, Plaintiff reported not finishing what she started and being unable to follow written or verbal instructions. R. at 214. She stated that she had been fired for defending herself and a patient, and

subsequently reported crying often and feeling depressed. R. at 215. Plaintiff stated that changes in routine put her into a "panic mode." R. at 215.

At the hearing, Plaintiff testified that she was unable to walk and stand for long periods of time, which prevented her from doing activities like grocery shopping. R. at 49. She stated that she did not drive anymore and that, in a typical day, she "[tried] to regain her life." R. at 47, 49. Plaintiff also complained that her back pain prevented her from standing or sitting for long periods of time. R. at 49–50.

Plaintiff's sister, Ms. Greene, testified at the hearing that she had seen a change in Plaintiff since the incident at her work in April 2015. R. at 52. Plaintiff had been living with her sister for about a year. R. at 52. Ms. Greene also reported that Plaintiff fell often and kept her up at night by continually getting up and down all night. R. at 52–53. The last time Ms. Greene reported a fall by her sister was within a couple weeks of the hearing. R. at 55.

The vocational expert, Linda Augins, appeared at the hearing and denied needing additional information about Plaintiff's vocational background, and the ALJ subsequently closed the hearing. R. at 58. Ms. Augins submitted a vocational interrogatory response that determined Plaintiff could not perform any of her past work, but that there were a number of jobs which she could perform given certain hypothetical limitations proposed in the vocational interrogatory, including mail sorter, photocopying machine operator, or price marking clerk. R. at 250–52.

### III. <u>THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ conducts a five-step sequential analysis for the Acting Commissioner. *Mastro*, 270 F.3d at 177. It is this process that the Court examines on judicial

review to determine whether the correct legal standards were applied and whether the resulting final decision of the Acting Commissioner is supported by substantial evidence in the record. *Id.* The ALJ must determine if:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.

*Strong v. Astrue*, No. 8:10-cv-357, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (noting that substantial gainful activity is "work activity performed for pay or profit."); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of proof to make a finding of whether a claimant is able to engage in substantial gainful activity)). "An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability." *Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014) (citing 20 C.F.R. § 404.1520). Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of October 4, 2015. R. at 13. At step two, the ALJ found Plaintiff had the following severe impairments: major depressive disorder, posttraumatic stress disorder, anxiety disorder, lumbar spine disorder, hypertension, post concussive syndrome, migraine, polysubstance use disorder, and obesity. R. at 13. The ALJ concluded that these impairments were "severe" because they "significantly limit[ed Plaintiff's] ability to perform basic work activities as required by SSR 85-28." R. at 13 (referencing SSR 85-28, 1985 WL 56856 (Jan.

7

1, 1985)). R. at 13.

At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. at 14–16 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).[2] Specifically, the ALJ found that Plaintiff's mental limitations did not satisfy "paragraph B" criteria because Plaintiff suffered only: a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, and maintaining pace; and a moderate limitation in adapting or managing oneself.[3] R. at 15. Further, other complaints did not meet the standards of listed impairments. R. at 14. The ALJ determined that Plaintiff's medically determinable mental impairments caused no more than moderate limitations in all functional areas listed in "paragraph B."[4] R. at 15. Similarly, the ALJ opined that Plaintiff's impairments did not satisfy the "paragraph C" criteria as evidence failed to establish that Plaintiff "rel[ied] upon medical treatment, mental health therapy, psychosocial supports, or highly structured settings to diminish the symptoms and signs of [her] mental disorders, yet only achieve[d] marginal adjustment." R. at 15.

In keeping with Plaintiff's impairment finding, the ALJ determined that Plaintiff had the residual functional capacity to perform light work, as defined in § 404.1567(b), with the following

---

[2] The ALJ compared Plaintiff's mental impairments with the criteria of listings 12.04, 12.06, and 12.15. R. at 18.
[3] To satisfy "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in the following functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; (4) adapting or managing themselves. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. For this criterion, "a marked limitation means that, due to the signs and symptoms of your neurological disorder, you are seriously limited in the ability to function independently, appropriately, effectively, and on a sustained basis in work settings." *Id.*
[4] "Moderate limitation" means that Plaintiff's functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

physical limitations: she can do work that does not require climbing ladders, ropes, or scaffolds; she can do work that does not require crouching, crawling, constant reaching overhead, working around hazardous machinery or unprotected heights, or fast pace or production work; she can occasionally stoop, kneel, balance, and climb ramps or stairs. R. at 16. As for her mental limitations, the ALJ found that Plaintiff can: understand, remember, and apply short and simple instructions; concentrate and persist to perform simple and routine tasks throughout an eight-hour workday with customary breaks; perform work that does not require tandem tasks, teamwork, or face-to-face interaction with the general public when performing work tasks; and adapt to routine work settings with very few changes and jobs that do not require independent decision-making or goal-setting. R. at 16.

In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p." R. at 16. The ALJ stated that claimant's medically determinable impairments "could reasonably be expected to cause the alleged symptoms" but that "claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. at 17. The ALJ recognized that Plaintiff's record was "replete with instances of noncompliance with medication and/or drug seeking behavior." R. at 18.

The ALJ also considered the medical opinions and prior administrative medical findings in accordance with 20 C.F.R. § 404.1520c. R. at 16. The ALJ evaluated the opinion of consultative examiner Dr. Bierenbaum, and did not find Dr. Bierenbaum's "onetime assessment" persuasive because it was not well-supported by a one-time examination, inconsistent with the consultative

examiner's Mini Mental Status Examination results, and "based on the claimant's subjective statements in the context of not taking prescribed medication, and engaging in polysubstance abuse." R. at 21. The ALJ also considered the opinions of the state agency examiners, finding the initial consultant opinion largely persuasive and agreeing with its recommendation of light work. R. at 21. The ALJ only added no overhead reaching. R. at 21. The ALJ also found that parts of the state agency psychological consultant's reconsideration opinion were ambiguous and therefore of little value regarding medium exertion and the "supervisory style" needed by Plaintiff. R. at 21.

At steps four and five, the ALJ determined that Plaintiff was incapable of performing her past relevant work as a psychiatric aide and nurse aide, which are considered medium, semiskilled work. R. at 22. The ALJ noted that transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support the finding that the claimant is not disabled regardless of any transferable job skills. R. at 22. Accordingly, while Plaintiff cannot resume her prior employment, the ALJ determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy. R. at 22. Specifically, the ALJ found that Plaintiff could perform the following representative occupations: mail sorter, photo copy machine operator, and price marking clerk. R. at 23. Thus, the ALJ determined that Plaintiff was not disabled from the alleged onset date, October 4, 2015, through the date of her decision, July 31, 2019. R. at 23.

### IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence

as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Britt v. Saul*, No. 19-2177, 2021 WL 2181704, at *2 (4th Cir. May 28, 2021) (quoting *Craig*, 76 F.3d at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

On appeal, Plaintiff presents only one claim of error: the ALJ erred by not properly considering the supportability and consistency of Dr. Bierenbaum's opinion and therefore the ALJ's RFC determination is not supported by substantial evidence. ECF No. 24 at 8–10. The Commissioner argues that the ALJ correctly considered the opinion by identifying reasons that Dr. Bierenbaum's statements were not supported by or consistent with the medical evidence, and therefore unpersuasive, as required under regulations. ECF No. 26 at 12–15.

11

Under the SSA regulations[5], the ALJ must consider each medical opinion in the record and articulate how persuasive they find the medical opinion based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the opinion. §§ 404.1520c(b), (c)(1)–(5), 416.920c(b), (c)(1)–(5). Supportability and consistency are "the most important factors" in determining the persuasiveness of a medical opinion, and accordingly, the ALJ must explain how he or she considered those factors in the written decision. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are," the "more persuasive the medical opinion[]" will be. §§ 404.1520c(c)(1), 416.920c(c)(1). As for consistency, "[t]he more consistent a medical opinion[]" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion[]" will be. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ may explain how they considered the other factors, including the medical source's relationship with the claimant, but are only required to do so when contradictory medical opinions regarding the same issue are equally supported by and consistent with the record. §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3). If medical opinions regarding the same issue are equally supported by and consistent with the record, the ALJ must articulate the other factors and consider their impact on the persuasiveness of the medical opinions. §§ 404.1520c(b)(3), 416.920c(b)(3).

### A. The ALJ Did Not Properly Evaluate Dr. Bierenbaum's Opinion.

Plaintiff argues that ALJ did not properly analyze Dr. Bierenbaum's opinion because substantial evidence of supportability and consistency pointed to its persuasiveness and the ALJ

---

[5] Because this matter involves a claim filed after March 27, 2017, the revised regulations regarding the evaluation of medical opinions set forth in Section 404.1520c apply in this case. Under the new regulations, ALJs no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion." § 404.1520c(a).

did not provide a sufficient narrative discussion of how evidence supported her conclusions. ECF No. 24 at 10–11. The Commissioner contends that the ALJ sufficiently described how she evaluated the factors of supportability and consistency to conclude that Dr. Bierenbaum's opinion was not persuasive. ECF No. 26 at 14–15.

Dr. Bierenbaum performed a consultative psychological examination on Plaintiff in December 2017. R. at 384–86. He relied on a history provided by Plaintiff as well as Plaintiff's Achenbach Adult Self-Report and a Mini Mental State Exam. R. at 384–85. Dr. Bierenaum found that Plaintiff's Mini-Mental State Exam "falls within the normal range, suggesting no gross difficulties with orientation, cognition, or memory" but also estimated that Plaintiff's intellectual functioning "fall[s] within the borderline range overall" and that "her memory appeared to be consistent with [that] level of intellectual functioning." R. at 385. Dr. Bierenbaum diagnosed Plaintiff with major depressive disorder, unspecified anxiety disorder, rule out post-traumatic stress disorder, borderline intellectual functioning, and various physical symptoms. R. at 385. Dr. Bierenbaum noted that his rationale for confirming her diagnoses was "evidence from the history and current assessment" of Plaintiff, despite the results of Plaintiff's Mini Mental State Exam. R. at 385. In his functional assessment, Dr. Bierenbaum found that

> The claimant might be able to perform simple and repetitive tasks with support, if such a job could be secured, although her physical symptoms and emotional difficulties could [place] some limitations on her ability to respond to the demands of the workday. She might be able to perform simple and repetitive tasks with direction and supervision, although she could find dealing with the public in a work setting to be challenging, related to her physical symptoms and emotional difficulties. Thus, she might have some mild to moderate difficulty successfully completing a normal workday or work week and interacting with coworkers . . . .

R. at 386.

In evaluating Dr. Bierenbaum's opinion, the ALJ found Dr. Bierebaum's opinion unpersuasive. The ALJ concluded that Dr. Biernbaum's finding that Plaintiff suffers from

13

borderline intellectual functioning was not "well supported by this one[-]time examination, especially given that it [was] inconsistent with he Mini Mental Examination results." R. at 21. As for Dr. Bierebaum's opinion on Plaintiff's functional limitations, the ALJ conluded "Dr. Bierenbaum's one[-]time assessment is based on the [Plaintiff's] subjective statements in the context of not taking prescribed medication, and engaging in polysubstance abuse" and therefore, the opinion was not persuasive. R. at 21. Lastly, the ALJ found that Dr. Biernbaum's opinions on Plaintiff's functional limitations were "equivocal[,] and therefore of little value in determining [Plaintiff's] functional limitations." R. at 21.

The ALJ improperly evaluated Dr. Bierenbaum's opinion for several reasons. First, in evaluating the persuasiveness of Dr. Bierenbaum's opinion, the ALJ found Dr. Bierenbaum's opinion not well-supported because it was a one-time examination, because it was inconsistent with the Mini Mental Examination results, and because it was based on the Plaintiff's subjective statements. Dr. Bierenbaum was specifically engaged by the Social Security Administration to act as a consultative examiner, and perform a one-time examination of Plaintiff. *See* § 404.1519a ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."). Thus, it makes little sense for the ALJ to discount Dr. Biernbaum's opinion for the same reason he was engaged to provide that opinion. Similarly, the ALJ did not explain why it was "not persuasive" for Dr. Bierenbaum, a psychologist, to support his opinion, in part, on Plaintiff's subjective statements. *Thompson v. Berryhill*, No. 4:18-CV-133-FL, 2019 U.S. Dist. LEXIS 113691, at *32 (E.D.N.C. Apr. 22, 2019) (finding that an ALJ's rejection of a psychiatrist's opinion on the grounds that it relies on a plaintiff's subjective statements "raises the specter" that the ALJ is "impermissibly making a medical judgment" because "[p]sychology and psychiatry

14

necessarily rely on such subjective reports because the types of disorders they deal with are not usually susceptible to direct physical observation as in other medical arenas."). Thus, while the ALJ addressed how she evaluated the supportability of Dr. Bierenbaum's opinion, those explanations do little to allow the Court to review the ALJ's supportability conclusions.

Second, in evaluating the persuasiveness of Dr. Bierenbaum's opinion, the ALJ did not sufficiently address the consistency factor and failed to explain whether Dr. Bierenbaum's opinion was consistent with "evidence from other medical sources and nonmedical sources." *See* §§ 404.1520c(c)(2), 416.920c(c)(2). Regarding consistency, the only observation the ALJ made was that *the ALJ* found that Dr. Bierenbaum's diagnosis that Plaintiff suffers from borderline intellectual functioning was inconsistent with the Mini Mental Examination results. R. at 21. However, the ALJ is not qualified to determine whether a diagnosis conforms with a psychologist-administered examination specifically intended to determine a claimant's diagnoses. *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (finding that an ALJ's labeling of a claimant's course of treatment as conservative "amounts to improperly 'playing doctor' in contravention of the requirements of applicable regulations.") (citations omitted). Under these circumstances, the ALJ did not sufficiently explain how Dr. Bierenbaum's opinion was unpersuasive. The ALJ failed to "build an accurate and logical bridge from the evidence to his conclusions" and does not allow for meaningful review by this Court. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

### B. The ALJ's Failure to Properly Evaluate Dr. Bierenbaum's Opinion was Harmless.

Although the ALJ failed to properly evaluate Dr. Bierenbum's opinion, the ALJ's failure was harmless because Dr. Bierebaum's opinion was entirely equivocal, and therefore there is no indication that Plaintiff's RFC or ultimate disability determination would have been different if the ALJ found Dr. Bierenbaum's opinion persuasive.

When confronted with an error committed by the ALJ, the Court must consider whether that error was harmless. *See Mascio*, 780 F.3d at 639 (considering if an ALJ's error in evaluating a claimant's credibility is only harmless error). To determine if an ALJ's error is harmless, the court must look to "the likelihood that the result would have been different" had the ALJ not erred. *Bisceglia v. Colvin*, 173 F. Supp. 3d 326, 333 (E.D. Va. 2016) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 411 (2009)). The burden of establishing a harmful error "rests on the party attacking the agency's determination." *Shinseki*, 556 U.S. at 409.

Here, although the ALJ erred by failing to properly evaluate Dr. Bierenbaum's opinion, that error was harmless and does not require remand. First, as noted by the ALJ, Dr. Bierenbaum's opinion was entirely equivocal, and therefore provides little value in determining Plaintiff's functional limits. *See* R. at 21. Each possible limitation in Dr. Bierenbaum's opinion states that Plaintiff "might" be able to perform a task, and that she "could" have some trouble with other tasks. *See* R. at 385. Without stating that Plaintiff would in fact be able or unable to perform certain tasks, or that Plaintiff could in fact have trouble with other tasks, Dr. Bierenbaum's opinion does not offer significant value, since the opposite of the dichotomy could also be true. For example, Dr. Bierenbaum's statement that Plaintiff "might be able to perform simple and repetitive tasks with direction and supervision," leaves open the reasonable possibility that Plaintiff also might be *unable* to perform simple and repetitive tasks with direction and supervision. By not clearly identifying his opinions as to what Plaintiff's functional limitations actually are, Dr. Bierenbaum's opinion offers little value in determining Plaintiff's limitations.

Second, despite the equivocal nature of Dr. Bierenbaum's opinions, the ALJ incorporated those limitations into Plaintiff's RFC. Dr. Bierenbaum found that Plaintiff "*might* be able to perform simple and repetitive tasks with support" including with "direction and supervision." R.

16

at 386. In congruence with that opinion, the ALJ found that Plaintiff had the RFC to perform simple, routine tasks, but would need "short, simple instructions" and would need a job that has "very few changes" and "do[es] not require independent decision-making or goal setting." R. at 16. Dr. Bierenbaum found that Plaintiff's "physical symptoms and emotional difficulties *could* pla[ce] some limitations on her abilities to respond to the demands of the workday" and those difficulties "could" result in Plaintiff "find[ing[ dealing with the public in a work setting to be challenging" and that Plaintiff "might have some mild to moderate difficulty successfully completing a normal workday or work week and interacting with coworkers." R. at 386. In congruence with that opinion, the ALJ found that Plaintiff could persist "throughout an 8-hour workday with customary breaks," could perform work that "does not require tandem tasks, teamwork, or face-to-face interaction with the general public," and could "adapt to routine work settings with very few changes." R. at 16. Thus, as just one example, even if Dr. Bierenbaum's opinion was more concrete in stating that Plaintiff *would have* (as opposed to "might have") mild to moderate difficulty completing a normal workday or workweek and interacting with coworkers, there is no indication that the ALJ's RFC determination would have been any different, since the ALJ provided that Plaintiff would need to take customary breaks and should not work with the general public—limitations that would account for those same difficulties identified by Dr. Bierenbaum. Thus, there is no evidence that Plaintiff's RFC or the ultimate disability determination would have been different had the ALJ not erred in evaluating Dr. Bierenbaum's opinion.

Plaintiff contends that the ALJ's error in evaluating with Dr. Bierenbaum's opinion was harmful because "[i]f properly credited, the opinion provides for additional limitations that would further erode the occupational base." ECF No. 24 at 16. However, aside from that general

17

statement, Plaintiff did not identify any specific limitations in Dr. Bierenbaum's opinion that the ALJ should have adopted, which would have changed Plaintiff's RFC or the ultimate disability determination. Even though Dr. Bierenbaum's opinion was largely equivocal, Dr. Bierenbaum did not find that Plaintiff would have any more than "mild to moderate" limitations in any areas of functioning. *See* R. at 386. Although the ALJ found that Dr. Bierenbaum's opinion was not persuasive, in finding that Plaintiff has moderate limitations, the ALJ cited, in part, Dr. Bierenbaum's evaluation and mental examination results, and opined that Plaintiff had moderate limitations in each area of "paragraph B" mental functioning. R. at 15. Thus, under these circumstances, Plaintiff has not met her burden to establish the "likelihood that the result would have been different" had the ALJ found Dr. Bierenbaum's opinion persuasive. *See Bisceglia*, 173 F. Supp. 3d at 333.

## VI. RECOMMENDATION

For all the reasons stated above, the Court **FINDS** that any error by the ALJ in evaluating Dr. Bierenbaum's opinion was harmless, and remand is not required. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 23, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 25, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure

Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Newport News, Virginia
December 21, 2021